**Larry E. WHITE**

v.

**E.L. BOOKER, Warden, et al.**

**Civ. A. No. 84–0390–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 7, 1984.

Larry E. White, pro se.

Peter H. Rudy, Asst. Atty. Gen., Richmond, Va., for defendant.

OPINION

WARRINER, District Judge.

On 2 July 1984, plaintiff, proceeding *pro se* and *in forma pauperis,* filed this complaint pursuant to 42 U.S.C. § 1983. On 24 July, defendants submitted a motion for an enlargement of time. This motion was granted by order of 14 August; defendants were directed to respond within ten days of the date of entry thereof. On 23 August defendants requested an additional seven days to respond to plaintiff's complaint. This motion was granted by order of 28 August. On 5 September defendants submitted a motion for summary judgment.

On 30 August plaintiff submitted a separate complaint under 42 U.S.C. § 1983 which he requested to be consolidated with this action. By order of 12 September, the Court entered an order granting the consolidation of plaintiff's complaint; defendants were directed to respond to the amended complaint within twenty days. On 21 September plaintiff was advised of an opportunity to respond to defendants' original motion for summary judgment. On 9 October plaintiff submitted his rebuttal materials.

On 3 October defendants submitted a supplementary motion for summary judgment based on the amended complaint and on 11 October plaintiff was advised of an opportunity to rebut this motion. On 19 November plaintiff submitted rebuttal materials concerning the supplementary motion for summary judgment. These motions are now ripe for consideration. The Court has jurisdiction pursuant to 28 U.S.C. § 1343.

In his original complaint, plaintiff alleges that he was not afforded a fair disciplinary hearing and that his due process rights were violated. Plaintiff was placed in pre-hearing detention and he was not provided a hearing for over fourteen days. Plaintiff has requested relief in the form of a declaratory judgment removing the disciplinary charge from his institutional record, and injunctive relief in the form of a court-ordered transfer from the Mecklenburg Correctional Center.

In his amended complaint, although the pleadings are vague, plaintiff appears to allege that he has been the subject of "massive and unnecessary harassment from the prison administration." Specifically, plaintiff alleges that he has received many "unnecessary charges" and was unjustly convicted by the Adjustment Committee. Plaintiff alleges that this harassment is based on defendants' objections to his "militant Muslim religious beliefs." In addition, plaintiff complains that he was "constantly shook-down, stopped and harassed."

The undisputed facts as developed in the motions show that on 7 February 1984 a routine search of plaintiff's cell was conducted. During that shakedown a homemade knife was found in plaintiff's cell. Plaintiff was promptly charged with the institutional offense of possession of a weapon or sharpened instrument. *See* Defendants' Exhibit I.

Possession of a weapon is a violation of Va.Code § 53.1–203 and is a Class VI felony in the Commonwealth. The Department of Corrections referred plaintiff's criminal activities to the local Commonwealth's Attorney. Plaintiff was tried in Richmond City Circuit Court, Division I, on 19 July 1984. He was found guilty of possession of a weapon. Plaintiff received a one-year prison sentence.

Defendants admit that after the 7 February discovery of the knife, plaintiff was placed in pre-hearing detention. Such a decision was based not only on the finding of the knife but also on plaintiff's extensive record of assaultive, disruptive behavior during incarceration. *See* Defendants' Exhibit II, Affidavit of Assistant Warden Hollar at 1, paragraph 3. Pre-hearing detention is one type of special purpose housing used at the Virginia State Penitentiary; it is employed to secure the confinement of inmates who have been charged with serious institutional rule violations until such

time as the Adjustment Committee can adjudicate the pending charges.

Pursuant to Division Guideline (DGL) # 861, an inmate can be held in pre-hearing detention for two working days before review by an ICC. formal hearing to determine whether the accused inmate continues to be a threat to persons or property. Defendants freely admit that in plaintiff's case, due to defendants' inadvertence, plaintiff was held in pre-hearing detention for over fourteen days before he appeared at an Adjustment Committee hearing on 22 February. Defendants Exhibit II at 2, paragraph 5.

## A. *Claims Concerning Unfair Disciplinary Hearing*

Plaintiff alleges that his disciplinary hearing was unfair because (1) Warden Booker neglected to investigate or properly address the issues plaintiff raised in his appeal and (2) the weapon in question was not fingerprinted. In response, defendants aver that all prescribed procedures were followed in plaintiff's case.

The tape of the disciplinary committee hearing was reviewed by Jennifer J. Jones, Grievance Coordinator at the Virginia State Penitentiary. This review is designed to insure that the guidelines of DGL # 861 were properly observed. Defendants state, and plaintiff does not dispute, that a report of this inquiry was forwarded to Warden Booker, who subsequently upheld the disciplinary committee action and informed the plaintiff of the reasons for his decision in doing so. *See* Defendant's Exhibit III at 2, paragraph 5.

■ Defendants submit that under the circumstances plaintiff's claims are frivolous under 28 U.S.C. § 1915(d) because there was a substantial basis on which to find plaintiff guilty of the institutional charge. Plaintiff, under institutional practices, is responsible for all materials found in his cell; it is undisputed that the knife was found in plaintiff's cell. This evidence, buttressed by the criminal conviction, would make it untenable for this Court to hold that there was not "any basis in fact"

to support the action taken by the disciplinary committee. *Jackson v. McLemore,* 523 F.2d 838, 839 (4th Cir.1975). In the absence of arbitrariness, federal courts will not review the actions of prison disciplinary committees. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Accordingly, summary judgment shall be GRANTED to defendants on these claims.

## B. *Claims Concerning Pre-hearing Detention*

■ Defendants acknowledge that, due to their inadvertence, there was a violation of DGL # 861 concerning the requirement of a review of the decision to place plaintiff in pre-hearing detention within 48 hours of such a decision. To the extent that plaintiff seeks to state a claim based specifically on State law, such claims are not cognizable under 42 U.S.C. § 1983. *Pennhurst State School and Hospital v. Halderman,* —— U.S. ——, ——, 104 S.Ct. 900, 926, 79 L.Ed.2d 67 (1984).

On the same factual basis, plaintiff claims a denial of due process under the fourteenth amendment. This Court is guided by the United States Supreme Court's recent decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). While acknowledging that prison administrative regulations may give rise to a protected liberty interest under the Fourteenth Amendment, the Court in *Hewitt* stated that if such a liberty interest is found to exist, "we must then decide whether the process afforded [the inmate] satisfied the minimum requirements of the Due Process Clause." Id.

Assuming, *arguendo,* that DGL # 861 creates a protected liberty interest in plaintiff to be free from being placed in administrative segregation, this Court must look to the federal Due Process Clause to determine if the State has provided plaintiff with the minimum prescribed procedures necessary to protect from State infringement upon such an interest.

In *Hewitt* the Supreme Court noted that the federal Due Process Clause requires only "an informal and non-adversarial review of the information supporting [the inmate's] administrative confinement, including whatever statement the inmate wishes to submit within a *reasonable time* after confining him to administrative segregation." 103 S.Ct. at 872, 74 L.Ed.2d at 689 (emphasis added).

It is clear from the evidence before this Court that the Adjustment Committee hearing held on 22 February provided at least the minimum prescribed procedural requirements mandated by the Due Process Clause. Therefore, the sole question before this Court is whether such a review took place within a reasonable time after confining plaintiff to administrative segregation.

In reviewing the reasonableness of the defendants' actions, this Court is guided by the *Hewitt* court's distinction of the case of *Gerstein v. Pugh*, 420 U.S. 103, 125, 95 S.Ct. 854, 868, 43 L.Ed.2d 54 (1975). In *Gerstein*, the Supreme Court held that pretrial detainment of citizens suspected of criminal acts requires that a fair and reliable determination of probable cause must be made by a judicial officer either before or promptly after arrest. In distinguishing *Gerstein*, the *Hewitt* court noted that:

"... the private interest at stake here is far less weighty than that in issue in *Gerstein* which involved removing a suspect from unrestricted liberty in open society and placing him in an institution. In contrast, as noted above, Helms was merely transferred from an extremely restricted environment to an even more confined situation .... respondent has a far less compelling claim to procedural safeguards than did the pre-trial detainees in *Gerstein*."

A review of the totality of the circumstances surrounding defendants' actions in neglecting to provide plaintiff with a hearing for over 14 days shows that while this action violated DGL #861, plaintiff was held in administrative segregation as opposed to isolation. The relative degrees of severity was even less weighty than in *Helms*. The Court notes that inmates in administrative segregation retain many of the same privileges afforded to those inmates in the general population:

"inmates in pre-hearing detention are permitted to retain additional property such as a radio, books, magazines, newspapers, periodicals, personal photos and a typewriter. Isolation inmates do not receive commissary privileges whereas pre-hearing detention inmates are permitted to place commissary orders at least once a week."

*See* Defendants' Exhibit II at 2, paragraph 4.

■ The defendants' actions in crediting all pre-hearing detention time towards plaintiff's eventual fifteen day isolation sentence which was imposed by the discipline committee reveals that the harm to plaintiff, if any, is *de minimus*. Accordingly, it is the opinion of the Court that the defendants' actions in failing to provide a hearing for up to fourteen days did not deprive plaintiff of any due process right to receive a hearing within a "reasonable time."

Even if a constitutional deprivation did occur, the plaintiff has an adequate State remedy as conferred by the State Tort Claims Act. As noted in the Supreme Court's analysis in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), due process has not been violated if the plaintiff possesses an adequate post-deprivation remedy under State law. Because plaintiff has a claim for a negligent deprivation of his liberty interest, this case falls squarely within the Fourth Circuit's holding in *Daniels v. Williams*, 748 F.2d 229 (1984). To the extent that any liberty deprivation is present, plaintiff's remedy and right of recourse lies in the State court system.

C. *Claims Regarding Harassment Based on Plaintiff's Religious Beliefs*

In his amended complaint, plaintiff states that he has been subjected to constant harassment by prison officials in retaliation for plaintiff's exercise of his "militant" religious beliefs. In response to this complaint, defendants submit the affidavit of Assistant Warden Fleming. Mr. Fleming states that, during plaintiff's incarceration at the Virginia State Penitentiary, plaintiff was convicted of fourteen (14) major institutional charges and that he (Fleming) has personally reviewed all fourteen Adjustment Committee Reports and is convinced that all prescribed procedures were followed in these various actions. *See* Defendants' Exhibit I at 1.

Specifically addressing the issue of religious harassment, Mr. Fleming states that on one occasion complaints were received from inmates who said that they were being intimidated by some members of the Nation of Islam religious group. As a result, security staff were advised of this information and advised to closely monitor the situation for any potential security problems. Mr. Fleming states that such actions constitute standard operating procedure whenever the administration is presented with any information which could threaten the security of the prison. Defendants' Exhibit I at 2, paragraph 8.

Pursuant to Fed.R.Civ.P. 56(e), plaintiff bears the burden of raising a genuine issue of fact in response to defendants' motion for summary judgment. Though invited to do so, *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975), plaintiff has failed to submit any sworn rebuttal materials addressing this issue. Accordingly, this Court will accept the defendants' statements as true. Summary judgment shall be ENTERED for defendants on this claim and plaintiff's complaint shall be DISMISSED.

An appropriate judgment shall issue.

Should plaintiff desire to appeal, written notice of appeal must be filed with the Clerk of the Court within 30 days of the entry hereof.